

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00310-CR

_____

STEVEN MAYLE, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1693326

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Steven Mayle appeals his conviction for continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02(b). On appeal, Mayle contends that the trial court abused its discretion by (1) refusing to grant a mistrial or to exclude the testimony of two witnesses after the State failed to disclose as soon as practicable its notes from a pretrial interview of these witnesses and (2) admitting certain out-of-court statements made by the victim and her mother over his Confrontation Clause and hearsay objections. We will affirm.

## I. BACKGROUND

Mother,[1] who was then living in Louisiana, met Mayle through mutual Facebook friends in early 2020, and they began an online relationship. In June 2020, she and her four children—including the victim, M.T., who was then nine years old—moved into Mayle's home in Fort Worth. The children soon came to view Mayle as a father figure and called him "dad" or "daddy."

According to M.T., Mayle appeared to be "a kind, nice person" at first, but then his behavior changed. In October 2020, he began sexually abusing her.

Mayle's sexual abuse of M.T. came to light after an incident that occurred on July 10, 2021. After coming home from work around midnight, Mayle settled into his den. After her siblings and Mother went to sleep, M.T. went to the den to play a

---

[1]Because the victim was a minor at the time of the offenses, we use aliases to refer to her and her family members. *See* Tex. R. App. P. 9.10(a)(3), (b).

videogame. Alone in the den with M.T., Mayle began to sexually abuse her. At some point, Mother woke up and learned from another of her daughters that M.T. and Mayle were in the den with the door locked. She burst into the den and found M.T. standing and facing Mayle, who was seated in a chair. M.T. was clad only in her underwear and a shirt and was cowering as if she had been assaulted. As soon as Mother entered the room, M.T. stated, "[H]e's sorry, he's drunk, and it hurts down there."

Mother told M.T. to cover herself with a blanket and run across the street to a neighbor's house for help. According to Mother, Mayle had an "I got caught" look on his face. Enraged, Mother grabbed a knife and stabbed Mayle nearly fifty times. When Mother went to the door to look for the police, Mayle retrieved a gun from the gun safe and asked Mother to kill him. Mother grabbed the gun away from him and waited for the police to arrive.

When the police arrived, they found Mother sitting on the front steps and temporarily placed her in a patrol car. Officers found Mayle lying on the den floor with slash wounds all over his body and holding a pair of juvenile female underwear. The responding officers called dispatch to have an ambulance and additional investigators sent to the scene.

M.T. was examined by a sexual assault nurse examiner (SANE), Nurse Maggie Higgins. During the examination, M.T. told Nurse Higgins about Mayle's sexual behavior towards her. Specifically, she stated that Mayle had touched her vagina and

3

her anus with his penis and his finger, had made oral contact with her genitals, and had engaged in acts of masturbation with her. M.T. said that the sexual abuse had occurred multiple times since the previous October and explained that she had not previously disclosed it because Mayle had threatened that he would no longer be her dad if she told anyone.

Ultimately, Mayle was indicted for nine offenses, including continuous sexual abuse of a child. He pled not guilty, and a jury trial was held. M.T. testified at trial regarding Mayle's various acts of sexual abuse. Mother and Nurse Higgins also testified.

After hearing all the evidence, the jury convicted Mayle of continuous sexual abuse of a child.[2] Following the trial's punishment phase, the jury assessed Mayle's punishment at ninety-nine years in prison. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

On appeal, Mayle raises seven points, many of which are interrelated. We address each of these points in turn below.

---

[2]Per the jury charge's instructions, the jury rendered no verdict regarding the remaining alleged offenses. *See Allen v. State*, 620 S.W.3d 915, 919–22 (Tex. Crim. App. 2021) (holding that the continuous-sexual-abuse statute prohibits a defendant's additional conviction of a predicate offense that "occurred [in]side the period in which the [continuous-sexual-abuse offense] was committed"); *see also* Tex. Penal Code Ann. § 21.02(e).

4

**A. Points One and Two: The State's Failure to Disclose Interview Notes**

In his first two points, Mayle contends that the trial court abused its discretion by declining either (1) to grant a mistrial or (2) to exclude Mother's and M.T.'s testimony after the State failed to disclose as soon as practicable its notes from a pretrial interview of these witnesses. We disagree.

**1. Relevant Background**

The week before trial, prosecutors met with Mother and M.T. in Louisiana for final trial preparation. During this meeting, Mother and M.T. changed certain details of their accounts regarding the sexual abuse that occurred and Mother's July 10, 2021 altercation with Mayle. The prosecutors did not discover until on the second day of trial—shortly before Mother was supposed to testify—that their interview notes reflecting these changed details had not been disclosed to Mayle's trial counsel.[3] Upon realizing their mistake,[4] the prosecutors promptly provided defense counsel with a three-page bullet-form set of notes. At Mayle's request, the trial court granted him a

---

[3]The record reflects—and the State does not dispute—that Mayle made numerous requests for discovery pursuant to Article 39.14(a) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14(a).

[4]The trial court shared its view that the interview notes appeared to be work product, which the State would not be required to produce. *See id.*; *In re State ex rel. Skurka*, 512 S.W.3d 444, 453–54 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *cf. Marshall v. Hall*, 943 S.W.2d 180, 183 (Tex. App.—Houston [1st Dist.] 1997, no writ) (concluding that attorney's agent's notes and summaries from witness interview were protected by the work-product privilege). The parties did not address this issue in their briefing, and we will assume for purposes of this appeal that the State was required to produce the interview notes.

twenty-two hour continuance to allow his attorneys time to review the newly provided interview notes before Mother and M.T. testified.[5] The trial court denied Mayle's oral request for a mistrial.

The following morning, Mayle filed a written motion requesting a mistrial or, alternatively, the exclusion of Mother's and M.T.'s testimony. After reviewing the motion and considering Mayle's oral argument in support thereof, the trial court denied all of the requested relief.

## 2. Applicable Law and Standard of Review

Article 39.14(a) of the Texas Code of Criminal Procedure (the Michael Morton Act) requires the State, "as soon as practicable after receiving a timely request," to produce and permit the inspection and electronic duplication of "material" evidence by the defense. Tex. Code Crim. Proc. Ann. art. 39.14(a); *State v. Heath*, 696 S.W.3d 677, 692 (Tex. Crim. App. 2024); *see Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021) (defining "material" under Article 39.14 as "having a logical connection to a consequential fact" and "synonymous with 'relevant'"). The State has an additional, affirmative duty to disclose "exculpatory, impeachment, or mitigating" materials that "tend[] to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." Tex. Code Crim. Proc. Ann. art. 39.14(h).

---

[5]Mayle asked for a half-day continuance; thus, the trial court actually granted him more time than he requested.

When the State willfully violates Article 39.14, the trial court may exclude the evidence at issue as "a court-fashioned sanction for prosecutorial misconduct." *See In re State*, 605 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2020, orig. proceeding); *see also Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014). But as this court has recognized, such exclusionary discovery sanctions should be reserved for exceptional cases, and when presented with an Article 39.14 violation, a trial court should consider "less drastic" remedies that do not inhibit the presentation of the case. *See State v. Johnson*, No. 02-24-00062-CR, 2024 WL 5162689, at *20 (Tex. App.—Fort Worth Dec. 19, 2024, pet. ref'd) (mem. op., not designated for publication); *see also Heath*, 696 S.W.3d at 707–08 (acknowledging that although the trial court had the authority to exclude undisclosed evidence, "a continuance would [have been] a much more restrained solution").

Similarly, a mistrial is an appropriate remedy only in extreme cases involving a narrow class of highly prejudicial and incurable errors. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). "Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009) (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006)).

We review a trial court's denial of a particular remedy for an Article 39.14 violation and a trial court's denial of a motion for mistrial for an abuse of discretion.

*Hance v. State*, 714 S.W.3d 775, 809 (Tex. App.—Fort Worth 2025, no pet.) (op. on reh'g). Under that standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884.

### 3. Analysis

Having reviewed the record, we cannot conclude that the trial court abused its discretion by refusing to declare a mistrial or to exclude Mother's and M.T.'s testimony based on the State's failure to disclose the interview notes. As Mayle acknowledges in his briefing, "[a] finding of willful misconduct . . . is required to justify the exclusion of evidence based on a discovery violation (including the State's violation of Article 39.14(a))." *State v. Alvarez*, No. 12-24-00175-CR, 2024 WL 4779117, at *3 (Tex. App.—Tyler Nov. 13, 2024, no pet.) (mem. op., not designated for publication) (citing *Heath*, 696 S.W.3d at 704, 708). But he does not assert—nor does anything in the record suggest—that the State's failure to disclose the notes was willful. Further, the trial court adequately remedied the State's late disclosure by giving Mayle's counsel time to review the interview notes before Mother and M.T. testified. *See Heath*, 696 S.W.3d at 707–08; *see also Bailey v. State*, No. 01-15-00215-CR, 2016 WL 921747, at *8 (Tex. App.—Houston [1st Dist.] Mar. 10, 2016, no pet.) (mem. op., not designated for publication) ("When the State has not wrongfully withheld evidence but the defendant is unfairly surprised because of the State's failure to comply [with a discovery order], the appropriate remedy is a continuance, to provide the defendant

an opportunity to review the evidence."). Because this less drastic measure was sufficient to remedy any prejudice resulting from the late disclosure,[6] the trial court did not abuse its discretion by declining to declare a mistrial or to exclude Mother's and M.T.'s testimony. *See Ocon*, 284 S.W.3d at 884–85; *Johnson*, 2024 WL 5162689, at *20.

We overrule Mayle's first and second points.

## B. Points Three Through Seven: Admission of Out-of-Court Statements

In his third through seventh points, Mayle contends that the trial court abused its discretion by allowing Nurse Higgins, the SANE who examined M.T., to testify regarding certain out-of-court statements that M.T. and Mother had made in connection with the sexual-assault examination and by admitting Nurse Higgins's records from the SANE exam.

Nurse Higgins testified that during the SANE exam, M.T. told her that:

---

[6]Mayle asserts that the continuance was insufficient to remedy the harm caused by the late disclosure because if he had been able to review the interview notes in advance, he would have emphasized the inconsistencies in Mother's and M.T.'s statements more in his opening statement and "could have geared his voir dire to emphasize the significance of inconsistent statements." But as Mayle acknowledges, he already emphasized the inconsistencies in M.T.'s story in his opening statement even without the benefit of the interview notes. And because the presence of inconsistencies in M.T.'s testimony was already a point of emphasis in Mayle's defense, it is unclear how the interview notes would have changed his approach to voir dire. Further, as the State points out, all of the changes in M.T.'s and Mother's accounts as reflected in the interview notes relate to peripheral details; none of them undercut the charged sexual-abuse allegations. Thus, we reject Mayle's contention that granting him a continuance was an insufficient remedy.

- Mayle had touched her vagina and her anus with his penis and his finger;

- Mayle had engaged in oral contact with her genitals;

- Mayle had engaged in acts of masturbation with her;

- Mayle had shown her pictures of naked adults;

- Mayle had used his phone to take photographs of her except for her face;

- The sexual abuse had begun in October 2020 and had continued over the ensuing months; and

- She had not previously disclosed the abuse because Mayle had told her that he would no longer be her dad if she told anyone.

Nurse Higgins also read for the jury the portion of her records reflecting Mother's recollection that M.T. had said, "[H]e's drunk and he's sorry, and it hurts down there," when Mother discovered Mayle and M.T. in the den on July 10, 2021.

Mayle asserts that the trial court abused its discretion by admitting these statements because they are hearsay and because their admission violated his rights under the Sixth Amendment's Confrontation Clause. We disagree.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only

10

when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 2. Hearsay Analysis

"Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not admissible unless a statute, a rule of evidence, or another rule prescribed under statutory authority provides otherwise. Tex. R. Evid. 802.

Under Rule 803(4), a hearsay statement is admissible if it is made for—and is reasonably pertinent to—medical diagnosis or treatment and describes medical history, past or present symptoms or sensations, their inception, or their general cause. Tex. R. Evid. 803(4); *Lumsden v. State*, 564 S.W.3d 858, 883 (Tex. App.—Fort Worth 2018, pet. ref'd). Rule 803(4) is premised on the patient's strong and selfish

motive to tell the truth to receive proper medical diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 580 (Tex. Crim. App. 2008). Thus, to establish this exception, the proponent of the evidence generally must show that the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements. *Id.* at 588–89. The proponent must also show that the statements were pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the patient. *Id.* at 591.

This court has recognized that "[t]he object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). Texas courts have acknowledged that a patient's statements made to a medical professional during a SANE examination fall within the Rule 803(4) exception to hearsay. *See Gutierrez v. State*, 630 S.W.3d 270, 279–80 (Tex. App.—Eastland 2020, pet. ref'd); *Sharp v. State*, 210 S.W.3d 835, 839 (Tex. App.—Amarillo 2006, no pet.); *see also Lumsden*, 564 S.W.3d at 888 ("[W]e held that [the SANE's] testimony was admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. Her handwritten report is similarly admissible under the medical-diagnosis-or-treatment exception to the hearsay rule."). A parent's statements to a medical professional in connection with a

12

SANE examination may also fall within the Rule 803(4) hearsay exception if they are pertinent to the victim's diagnosis and treatment. *See Castillo v. State*, No. 07-23-00193-CR, 2024 WL 3958428, at \*10 (Tex. App.—Amarillo Aug. 27, 2024, no pet.) (mem. op., not designated for publication); *Delavega v. State*, No. 05-21-00229-CR, 2022 WL 1564548, at \*4 (Tex. App.—Dallas May 17, 2022, no pet.) (mem. op., not designated for publication).

Because Mother's and M.T.'s statements to Nurse Higgins describing Mayle's acts of sexual abuse were pertinent to M.T.'s medical diagnosis and treatment, they fall within the Rule 803(4) exception. *See Gutierrez*, 630 S.W.3d at 279–80; *Sharp*, 210 S.W.3d at 839; *Beheler*, 3 S.W.3d at 188; *see also Castillo*, 2024 WL 3958428, at \*10; *Delavega*, 2022 WL 1564548, at \*4. Similarly, Mother's statement regarding what M.T. had said when she opened the door to the den on July 10, 2021—particularly M.T.'s indication that "it hurts down there"—conveyed information that was pertinent to M.T.'s diagnosis and treatment; thus, it was also admissible under the Rule 803(4) exception.[7] *See Castillo*, 2024 WL 3958428, at \*10; *Delavega*, 2022 WL 1564548, at \*4.

---

[7]M.T.'s out-of-court statement that "he's sorry, he's drunk, and it hurts down there" came into evidence not only through Nurse Higgins's medical records and testimony but also through Mother's testimony. At trial, Mayle objected to Mother's testimony about this out-of-court statement on hearsay grounds and argued that it should be characterized as an outcry statement, and he raises these arguments again on appeal. However, because the statement in question did not provide the specific details necessary to charge Mayle with the offense of which he was ultimately convicted—continuous sexual abuse of a child—the trial court could have reasonably concluded that it was just a general allusion of sexual abuse, not a true outcry statement. *See Venancio v. State*, Nos. 02-21-00147-CR, 02-21-00148-CR, 2022 WL

13

Finally, M.T.'s statement that Mayle had exposed her to pornography as part of the grooming process conveyed pertinent medical information and is therefore also covered by the Rule 803(4) exception. *See Martinez v. State*, No. 10-16-00397-CR, 2018 WL 2142742, at *4 (Tex. App.—Waco May 9, 2018, no pet.) (mem. op., not designated for publication) (holding that Rule 803(4) exception covered complainant's statement that defendant had "showed her pornography").

We overrule Mayle's fourth, fifth, and seventh points.

### 3. Confrontation Clause Analysis

The Sixth Amendment's Confrontation Clause, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004); *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010) (citing U.S. Const. amend. VI). "[T]he most

17687436, at *3 (Tex. App.—Fort Worth Dec. 15, 2022, no pet.) (mem. op., not designated for publication); *see also Brown v. State*, 381 S.W.3d 565, 571–72 (Tex. App.—Eastland 2012, no pet.) (holding victim's statements to 911 dispatcher that "her mom made her put her hands up in her" and that "her dad put his middle part up in her" and to responding officer that "her parents 'touched her in her private areas' and that her 'dad puts his male parts inside of her'" did not provide sufficient detail to describe the offense of continuous sexual abuse of a child). Further, because evidence of M.T.'s out-of-court statement was properly admitted during Nurse Higgins's testimony under the Rule 803(4) exception, any error in the admission of Mother's testimony regarding this statement was harmless. *Lamerand v. State*, 540 S.W.3d 252, 256–57 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) ("The erroneous admission of hearsay does not constitute reversible error 'if other evidence proving the same fact is properly admitted elsewhere.'" (quoting *Infante v. State*, 404 S.W.3d 656, 663 (Tex. App.—Houston [1st Dist.] 2012, no pet.))).

important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011). Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374).

"[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Adkins v. State*, 418 S.W.3d 856, 861–62 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013)). A court considers the totality of the circumstances in determining whether a statement is testimonial. *Clark v. State*, 282 S.W.3d 924, 931 (Tex. App.—Beaumont 2009, pet. ref'd).

As noted, we generally review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). But when, as here, the admission of evidence involves a constitutional legal ruling—in this case, whether a statement is testimonial or nontestimonial for Confrontation Clause purposes—we give almost total deference to the trial court's

determination of historical facts, but we review de novo the trial court's application of the law to those facts. *See Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 742 (applying hybrid standard of review to issue of whether statement was testimonial).

Because M.T.'s and Mother's complained-of statements to Nurse Higgins—a medical professional—were made for the primary purpose of medical diagnosis and treatment, not developing facts for later litigation, they do not constitute testimonial hearsay. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S. Ct. 2527, 2533 n.2 (2009) (stating that "medical reports created for treatment purposes" are not testimonial); *Malone v. State*, No. 02-10-00436-CR, 2011 WL 5118820, at *3 (Tex. App.—Fort Worth Oct. 27, 2011, no pet.) (mem. op., not designated for publication) (holding that a victim's statement to an on-scene EMT that the defendant had kicked her was not testimonial for Confrontation Clause purposes); *Martinez v. State*, No. 08-09-00065-CR, 2010 WL 2619647, at *4 (Tex. App.—El Paso June 30, 2010, no pet.) (not designated for publication) (holding similarly and collecting similar cases); *see also Lollis v. State*, 232 S.W.3d 803, 807 (Tex. App.—Texarkana 2007, pet. ref'd) ("[W]hen a forensic or investigatory motive predominates, the resulting statements are testimonial; when therapeutic or healing motive predominates, statements are not testimonial.").

Further, both M.T. and Mother testified at trial and were available for cross-examination. Thus, even if their out-of-court statements to Nurse Higgins had been testimonial, the statements' admission would still not have violated Mayle's

16

confrontation rights. *See Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9; *see also Wells v. State*, 558 S.W.3d 661, 667 (Tex. App.—Fort Worth 2017, pet. ref'd) (holding that defendant's confrontation rights were not violated by medical professional's testimony detailing complainant's out-of-court statements made during sexual-assault examination because the complainant testified at trial and was subjected to cross-examination); *Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi–Edinburg June 15, 2017, no pet.) (mem. op., not designated for publication) (holding testimony by nurse examiner's supervisor about patient's "verbatim" medical history reflected in nurse's sexual-assault report did not violate Confrontation Clause because patient was declarant and because patient was subject to cross-examination).

We overrule Mayle's third and sixth points.

## III. CONCLUSION

Having overruled all of Mayle's points, we affirm the trial court's judgment.

/s/ Mike Wallach

Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 11, 2025

17